UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FHARMACY RECORDS, et al.,

                Plaintiffs,

v.

SALAAM NASSAR, et al.,

                Defendants.

_____/

CIVIL ACTION NO. 05-72126

DISTRICT JUDGE DAVID M. LAWSON

MAGISTRATE JUDGE DONALD A. SCHEER

## REPORT AND RECOMMENDATION

This matter is before the magistrate judge by Order of Reference for determination of the amount of attorneys fees, costs and expenses, if any, that should be awarded to the respective Defendants, and for determination of whether Plaintiffs' attorneys ought to be personally accountable for any or all of the fees and expenses which may be awarded. The parties appeared for hearing on January 9, 2009. The matter was taken under advisement, pending my review of the record.

Plaintiffs' filed their Complaint on May 31, 2005. They alleged copyright infringement with respect to a musical composition entitled "Shot Down." They claimed that the work incorporated a rhythm or beat ("ESS Beats") developed by Plaintiff Rivers and assigned to Plaintiffs Fharmacy Records Production Co. and Fharm I Publishing Co. In addition to their claim under the Copyright Act, Plaintiffs alleged unfair competition and intentional interference with contractual and business relationships. Those state law claims were dismissed with prejudice, as frivolous, in an Order of January 20, 2006. After thirty-four (34) months of exceptionally contentious litigation,[1] the district judge granted the

_____

[1] The docket sheet reflects 319 entries, to date, and consumes 58 pages.

Defendants' Motion for Summary Judgment.  The court further found that Plaintiffs or their representatives had "altered, lost and destroyed evidence in the case," such that dismissal under the court's inherent authority to address such abuses was warranted.  (Docket Entry 248, p. 2).  Judgment for Defendants was entered on the same day.  (Docket Entry 249).

On April 14, 2008, Defendants filed their Motion for Attorney Fees and Costs under 17 U.S.C. §505, 28 U.S.C. §1927 and the court's inherent authority.  (Docket Entry 252).  On August 15, 2008, the court entered an Opinion and Order addressing the Defendants' Motion.  The district judge noted that the Copyright Act authorizes an award of costs and reasonable attorney fees to a prevailing party in an action brought under the statute.  17 U.S.C. §505.  Such an award is a matter within the court's discretion.  Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 (1994).     The court also observed that an award of fees and costs under 28 U.S.C. §1927 may be imposed against an attorney whose conduct is unreasonable, and who multiplies proceedings vexatiously.  The statute provides that a court may hold the parties and their counsel jointly and severally liable.  See Royal Oak Entertainment, LLC v. City of Royal Oak, 486 F.Supp. 2nd 675, 679 (E.D. Mich. 2007).

The court referred the Defendants' Attorney Fee Motion to the undersigned magistrate judge "for the purpose of determining the amount of attorney fees, costs, expenses, if any, that should be awarded to the respective Defendants, and to determine further whether Plaintiffs' attorneys ought to be personally accountable for any or all of those fees and expenses . . .."  (Order, Docket Entry 271, p. 19).

### Defendants' Entitlement to Attorney Fees Under the Copyright Act

In granting summary judgment for the Defendants, the court found that Plaintiffs had not produced evidence establishing that the accused work, "Shot Down," contains a direct

2

or indirect "recapture [of] the actual sounds fixed in the recording" Plaintiff Rivers claimed

to have made, or a rearrangement of "the actual sounds fixed in [Rivers'] sound recording."

That finding precluded Plaintiffs' recovery on their sole remaining theory of liability, a claim

of unlawful sampling under 17 U.S.C. §114(b).  The March 31, 2008 Order of Judgment

was thus entered on the merits, and incontestably rendered Defendants the prevailing

parties in the action.  Title 17 U.S.C. §505 provides as follows:

> In any civil action under this Title, the court in its discretion may
> allow the recovery of full costs by or against any party other
> than the United States or an officer thereof.  Except as
> otherwise provided by this Title, the court may also award a
> reasonable attorneys fee to the prevailing party as part of the
> costs.

An award of attorney fees under the Copyright Act is a matter of the court's discretion, but

it is clear that prevailing plaintiffs and prevailing defendants must be treated alike in the

exercise of that discretion.  Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994).  Our circuit has

held that the grant of fees, while a matter of discretion, is "the rule rather than the

exception."  Thoroughbred Software Int'l, Inc. v. Dice Corp., 488 F.3d 352, 362 (6th Cir.

2007) (internal quotation marks omitted).

The Supreme Court, in Fogerty, identified non-exclusive factors which may serve

to inform the exercise of judicial discretion.  Those include "frivolousness, motivation,

objective unreasonableness (both in the factual and legal components of the case), and the

need in particular circumstances to advance considerations of compensation and

deterrence."  510 U.S. at 534 n. 19.  No single factor is necessary or dispositive, and they

may be considered in conjunction with other factors a court may find significant in a

3

particular case. <u>Bridgeport Music, Inc. v. Diamond Time, LTD</u>, 371 F.3d 883, 894 (6th Cir. 2004).

In his Opinion and Order of August 15, 2008, the district judge determined that the <u>Fogerty</u> factors, and the need to advance considerations of compensation and deterrence, "all weigh heavily in favor of costs and fees under §505." The court made specific reference to the findings stated in his Order Granting Defendants' Motion for Summary Judgment that Plaintiffs and their attorneys had engaged in "disturbing conduct" regarding "the manipulation and destruction of evidence in the case . . .." A fulsome discussion of a pattern of questionable conduct by Plaintiffs and their attorneys comprises a substantial portion of the court's 48 page opinion, and need not be recounted in detail here. Suffice it to say that the court found Plaintiffs and their counsel to have engaged in the following obstructive conduct:

      a. Mr. Reed lost the "original" CD purportedly containing Rivers' creation;

      b. Rivers' zip disc was intentionally wiped of data;

      c. Rivers lost an audio tape recording allegedly containing Nassar's confession;

      d. The Fharmacy computer allegedly used in 2001, and which purportedly contained a "dumped" copy of"EssBeats" did not even exist until 2003;

      e. The computer files that appeared on the Fharmacy computer were intentionally backdated;

      f. The 2001 assignment document referenced certain Fharmacy entities that were not even formed until 2004;

      g. The original assignment documents were lost;

      h. The computer that allegedly was used to draft those documents was discarded; and

> i.  The R.J. Rice hard drive containing the file dates for another
> purported version of "Ess Beats" could not be verified.

(Opinion and Order, Docket Entry 248, p. 44).  The district judge noted that the foregoing

list did not include "material inconsistencies in the Plaintiffs' testimony, late disclosure of

evidence, misrepresentation of evidence and prevarications by Mr. Reed in his

representations to opposing counsel."  (Id.).  All of those matters were considered by the

court in making the determination that a grant of summary judgment to the Defendants was

warranted.  I am not at liberty to challenge those findings.  Even if I was free to alter the

district judge's conclusions, I find no basis in my review of the record for doing so.  I am

satisfied that an award of reasonable attorney fees to the Defendants is plainly authorized

by 17 U.S.C. §505, and that it is fully warranted by the facts and circumstances of record

in this action.

### Defendants' Entitlement to Attorney Fees Pursuant to 28 U.S.C. §1927

> Any attorney or other person admitted to conduct cases in any
> court of the United States or any territory thereof who so
> multiplies the proceedings in any case unreasonably and
> vexatiously may be required by the court to satisfy personally
> the excess costs, expenses and attorneys fees reasonably
> incurred because of such conduct.

Title 18 U.S.C. §1927.  Our circuit has held that, as it is penal in nature, the statute is to be

strictly construed.  United States v. Ross, 535 F.2d 346 (6th Cir. 1976).  "[T]he application

of §1927 is warranted when an attorney has engaged in some sort of conduct that, from

an objective standpoint, 'falls short of the obligations owed by a member of the bar to the

court and which, as a result, causes additional expense to the opposing party.'"  Holmes

v. City of Massillon, 78 F.3d 1041, 1049 (6th Cir. 1996) (quoting In Re: Ruben, 825 F.2d

977, 984 (6th Cir. 1987), cert. denied, 485 U.S. 934 (1988)).  Defendants maintain that the

5

requirements of the statute, as interpreted in the case law, are satisfied in this case, at least as to Mr. Gregory Reed, Plaintiffs' lead counsel. Defendants' Motion for Attorney Fees and Costs catalogs a number of actions attributed to Plaintiffs' counsel by the district judge in his Opinion and Order Granting Defendants' Motion for Summary Judgment. In addition to "losing" the original CD purportedly containing Rivers' work, the court found that Mr. Reed had engaged in the following conduct:

> a. Supplying incomplete and evasive answers to initial written discovery (Opinion and Order, Docket Entry 248, p. 4);
>
> b. Failing to timely produce Plaintiffs' electronic and other evidence not previously disclosed in written discovery, but revealed during Plaintiffs' deposition (Id., p. 15);
>
> c. Failing to timely disclose the R.J. Rice evidence Plaintiffs intended to rely upon at trial (Id., p. 16);
>
> d. Obliging Defendants to file a Motion to Reopen Discovery to Compel Production and Testing of Previously Undisclosed Evidence (Id., p. 17);
>
> e. Thwarting Defendants' request for inspection and testing of Plaintiffs' electronic data (Id.);
>
> f. Providing a false declaration concerning his receipt of the Seaton CD and accounting for its loss (Id., p. 18-19);
>
> g. Retaining a putative expert, Bernard Terry, who intentionally backdated the files on the Fharmacy computer (Id., p. 21);
>
> i. "Losing" the original (and inherently dubious) assignment documents (Id., p. 23);
>
> j. Preparing an Affidavit for R.J. Rice stating that Rice believed "Ess Beats" and "Shot Down" to be identical, only to have Rice testify on deposition that he never heard "Ess Beats" before (Id., p. 26-27);

k.  Holding out Bernard Terry as a computer forensic examiner when Terry had no such expertise, and drafting a declaration and "expert reports" in an effort to obfuscate that fact (Id., p. 31-32);

l.  Filing a motion to exclude Defendants expert that "has no merit" and was "a vexatious response to Defendants' motion" and that "plagiarized" Defendants' motion (Id., p. 46); and

m.  Filing a tit-for-tat, meritless and plagiarized Motion for Sanctions against Defendants (Id.).

Plaintiffs' failure to disclose basic evidence in support of their copyright claims is simply inexcusable.  Fed.R.Civ.P. 26(a)(1) requires that a party identify persons "likely to have discoverable information - along with the subjects of that information - that the disclosing party may use" to support its claims.  Further, the rule requires production of "a copy - or a description by category and location - of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody or control and may use to support its claims . . .."  The originally assigned district judge entered an Order that the required disclosures be completed by March 10, 2006.[2]  The record reflects, however, that the court's early effort secure compliance with the rule had no salutary effect on Mr. Reed.   On the contrary, his clients' written discovery responses were evasive, inaccurate and non-responsive.  Mr. Reed embarked upon a lengthy and unremitting campaign of deception, which included the concealment of evidence; production of suspicious documents and things (CD, assignment agreements, Rice

---

[2]  It is worthy of note that the same judge imposed §1927 sanctions against Mr. Reed for his inclusion of two frivolous state law claims in his Complaint, and his effort to defend that action with a "nonsensical argument" based on supplemental jurisdiction, despite the fact that he had recently failed in a similar argument before the same judge. (Order, Docket Entry 56).

declaration); spoiled or fabricated exhibits (zip disc, backdated computer files); lost evidence (CD; original assignments, taped telephone conversation); and pitifully unqualified "expert" opinion, all as described in great detail by the district judge in his grant of summary judgment to Defendants. (Opinion and Order, Docket Entry 248). In the last analysis, despite his substantial effort, he was unable to present a case sufficient to withstand summary judgment. I am fully persuaded that Mr. Reeds' deceptive and indefensible manipulation of the purported evidence in this case is responsible for the entirety of the time and effort Defendants were obliged to expend in their defense of a highly questionable, if not frivolous, copyright claim. Had an honest and competent evaluation of the evidence been undertaken prior to the filing of the Complaint, it is likely that no court action would have been filed. I view this case as a perfect example of a circumstance warranting the imposition of an award of costs, expenses and attorneys' fees under 28 U.S.C. §1927.

The moving Defendants seek recovery of their attorneys' fees, costs and expenses against Mr. Reed's co-counsel, Stephanie Hammonds, as well. They maintain that, as co-counsel, Mr. Reed and Ms. Hammonds should be held jointly and severally responsible for Defendants' expenditures in defending the case. Movants correctly observe that Ms. Hammonds signed most of the pleadings and documents in the case, including Plaintiffs' Motion for Summary Judgment, their Motion for Sanctions and their Motion to Exclude Mr. Portrafka's Expert Opinions. Nonetheless, I am persuaded from my review of the record that the specific acts of misconduct and obfuscation which persuaded the court to enter Judgment for the defense are attributable directly to Mr. Reed. Indeed, the Defendants' motion cites no instance of clear misconduct on the part of Ms. Hammonds. There is no

8

direct evidence of her complicity in the concealment or alteration of any evidence in the case.  I would note further that she was not counsel of record for Plaintiffs at the time the original Complaint was filed.  Only Mr. Reed was responsible for the formulation of the initial pleadings, and the assertion of the two frivolous state law claims for which he was sanctioned by Judge Roberts.  While Ms. Hammonds did subsequently assume an active role as counsel in the case, I am satisfied that neither the Copyright Act nor 28 U.S.C. §1927 was intended to discourage or punish zealous, but unsuccessful, advocacy.  In the absence of a showing of specific acts of misconduct on her part, I conclude that no monetary sanction should be imposed against attorney Hammonds.

As noted by the court in his August 15, 2008 Opinion and Order referring the instant motion to the magistrate judge, the proper method of determining the amount of attorneys' fees to be imposed under fee shifting statutes is well recognized.

> A starting point is to calculate 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'  (This is known as the "lodestar" calculation.)  The court should then exclude excessive, redundant, or otherwise unnecessary hours.  Next, the resulting sum should be adjusted to reflect the 'result obtained.'

Wayne v. Village of Sebring, 36 F.3d 517, 531 (6th Cir. 1994) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433-34 (1983) (calculation of attorney fees under 42 U.S.C. §1988).  Our circuit has adopted the lodestar approach for calculations under the Copyright Act.  See Ametex Fabrics, Inc. v. Custom Interiors and Supply Co., 162 F.3d 1161, 1998 WL 553046, *3 (6th Cir., August 11, 1998) (table case); see also Bridgeport Music, Inc. v. Lorenzo, 255 F.Supp. 2nd 795, 800-01 (M.D. Tenn. 2003), aff'd sub nom, Bridgeport Music, Inc. v. Diamond Time, Ltd., 371 F.3d 883 (6th Cir. 2004).  "[T]he fee applicant bears the burden

9

of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Hensley, 461 U.S. at 437; see also Dubay v. Wells, 442 F.Supp. 2nd 404, 415-16 (E.D. Mich. 2006); Mehney-Egan v. Mendoza, 130 F.Supp. 2nd 884, 885 (E.D. Mich. 2001).

For purposes of the lodestar calculation, a reasonable hourly rate for attorney fees is determined by reference to the market place. Missouri v. Jenkins, 491 U.S. 274, 285 (1989). The court requires more than a mere affidavit that the attorney claimant charges a particular rate. Rather, the claimant must provide evidence of the prevailing rates in the relevant community. Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984). A higher level of attorney experience warrants the award of a higher fee. Id. A reasonable attorney fee also includes reasonable compensation for paralegals and law clerks, whose work should generally be compensated at the rates at which it is billed to clients. Jenkins, supra. While some courts apply higher hourly rates to in court work than out of court services, most apply a flat rate for all work by a particular attorney. See In re: Meese, 907 F.2d 1192 (D.C. Cir. 1990).

In calculating the fee to be imposed, the court must multiply the appropriate hourly rate by the number of hours reasonably expended in rendering the service. Hours attributable to excessive, redundant or otherwise unnecessary work must be excluded. Hensley v. Eckerhart, 461 U.S. 424, 434 (1983). Thus, courts have reduced fee awards where the requested fee reflected duplication of services, excessive time for simply or routine tasks, the use of too many attorneys, excessive conferencing, unnecessary consultant work, or the performance of clerical tasks by legal professionals. Hirsch and Sheehey, Awarding Attorneys' Fees and Managing Fee Litigation (2nd Edition), Federal

10

Judicial Center 2005, p. 26.  Nonetheless, "courts have held that it is improper to engage in an 'ex post facto determination of whether attorney hours were necessary to the relief obtained.'  The issue 'is not whether hindsight vindicates an attorneys' time expenditures, but whether at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'"  Id. at 29 (citing Grant v. Martinez, 973 F.2d 96, 99 (2nd Cir. 1992) cert. denied, 113 S.Ct. 978 (1973); Woolridge v. Marlene Indus. Corp., 898 F.2d 1169, 1177 (6th Cir. 1990).

It is the fee claimant's obligation to provide sufficient documentation of the hours spent, as well as of the market rate.  Inadequate documentation is grounds for a reduction of the award.  Hensley, 461 U.S. at 433.  A diary or journal is not essential, but most courts prefer contemporaneous fee records as documentation of the time expended.

In addressing Defendants' Motion for Attorney Fees in his Opinion and Order of August 15, 2008, (Docket Entry 271), the district judge determined that the exhibits supporting the amounts requested did not furnish the level of detail necessary to determine the reasonableness of the fee requests.  Specifically, the court found that the supporting documents did not "allow the court to assess the amount of time spent on specific tasks by individual lawyers, and [did] not furnish sufficient detail to permit a reasoned challenge by Plaintiffs or their attorneys."  The issue was thereupon referred to the magistrate judge for hearing to "determine the amount of attorney fees, costs and expenses, if any, that should be awarded to the respective Defendants, and to determine further whether the Plaintiffs' attorneys ought to be personally accountable for any or all of those fees and expenses. . .."  (Id., at p. 19).  Thereafter, Defendants filed a Joint Supplemental Memorandum, supported by Attorney Declarations and billing records.  (Docket Entries 279-284).

11

Plaintiffs filed their Response and supporting exhibits on January 7 and 8, 2009.  (Docket Entries 315-317).  The parties appeared for hearing on January 9, 2009, and the matter was taken under advisement.

### Defendants' Requests

Defendants' Joint Motion, as supplemented,  seeks an award of $605,773.16, jointly and severally, against Plaintiffs and their counsel of record.  Dickenson Wright PLLC, the law firm representing the Island Deaf Jam Music Group, a Division of UMG Recordings, Inc.; Universal Music Publishing, Inc.; Universal Music and Video Distribution Corp. ("Universal Defendants") and Curtis Jackson billed attorney fees of $237,303.50, together with expert fees in the amount of $14,273.28 and expenses in the amount of $12,407.57.[3] Butzel Long Davis, P.C., the attorneys for Defendant EMI April Music, Inc. ("EMI"), and later Defendant Janice Combs Publishing ("JPC"), charged attorney fees in the amount of $227,216.50, together with expert witness fees totalling $14,233.78 and costs amounting to $9,200.03.  Plunkett Cooney PLC, also counsel for Defendant JPC seeks an attorney fee award of $35,000.00 (inclusive of $1,545.67 in expenses).  The firm of Jonathan D. Davis, P.C. also counsel for JCP seeks attorney fees in the amount of $24,324.00, paralegal expenses of $900.00 and expenses in the sum of $142.75.  Leslie C. Schefman, Esq., counsel for Defendants Salim Nassar and Soo Soo's Sweet Swisher Music, seeks attorney fees in the sum of $30,771.75.  All of the attorney fee and expense requests were combined in Defendants' Joint Motion for Attorney Fees and Costs (Docket Entry 252).

---

[3]  The attorney fee request includes $4,115.50 previously awarded to the Universal Defendants in this case, pursuant to §1927.  Any additional fees awarded should not include this amount.

12

**Lodestar Analysis**
**Hours Reasonably Expended**

It is obvious that the moving Defendants are seeking a very large award of fees and costs. They maintain, however, that the attorneys' fees claimed are reasonable because: 1) the number of hours spent defending their respective clients was necessitated by the "egregious misconduct" of Plaintiffs and their counsel; 2) defense counsel did not spend excessive, redundant, or unnecessary hours defending their clients; and 3) defense counsels' hourly rates are consistent with the prevailing fees in Detroit for similar services by lawyers of comparable skill, expertise and reputation. Movants further assert that their claims for costs are reasonable because the amounts reflect customary charges for services and materials utilized in litigation.

In awarding a reasonable fee, the court should consider the time and labor required, the novelty and difficulty of the litigation, and the experience, reputation and ability of the attorneys. Princeton Univ. Press v. Smith, 869 F.Supp. 521, 523 (E.D. Mich. 1994) citing Kelly v. Metro Cty. Bd. of Ed., 773 F.2d 677, 683 (6th Cir. 1983). The level of success achieved is also a relevant factor in determining the proper amount of fees. Id. The fee requests in the instant case are for services rendered in the defense of copyright claims against eight separate Defendants (out of sixteen Defendants originally sued) over a period of nearly three years. The time records presented confirm the nature of the services rendered, as set out in their supplemental brief at pages 8-9, including:

- review and analysis of Plaintiffs' Complaint;

- formulation and filing of respective answers;

- legal research regarding Plaintiffs' claims;

13

- witness interviews;

- research and filing of partial motion to dismiss complaint;

- preparation of Rule 26(a) disclosures;

- preparation of Rule 26(f) plan;

- preparation for and attendance at Rule 16 conference;

- drafting of discovery requests to Plaintiffs;

- drafting of Defendants' respective responses to Plaintiffs' discovery requests;

- assembly, review and production of documents on behalf of Defendants;

- review and analysis of documents produced by the various parties in discovery;

- drafting of a protective order;

- preparation for and conduct of depositions of the parties;

- review and analysis of Plaintiffs' expert reports;

- retention of and consultation with defense experts;

- research, drafting and prosecution of defense Motion for Summary Judgment;

- research and defense of Plaintiffs' Motion for Summary Judgment;

- consultation with counsel for co-Defendants; and

- consultation with respective client Defendants.

Movants further note that they were required to expend much of their time and effort responding to the various acts of misconduct by Plaintiffs and their counsel. The extent of

that misconduct was such that the court characterized it as a "campaign of fraud," deserving of dismissal of the Complaint, with prejudice.

Movants assert that they have not spent excessive, redundant or unnecessary hours in defending their clients. They note that the five law firms, whenever possible, coordinated their effort to avoid duplication of work and unnecessary costs "by designating one of the Defendants' attorneys to take the lead in researching and drafting the initial versions of written motions and responses on behalf of all Defendants." (Joint Supplemental Memorandum, p. 11). Upon completion of the initial draft, each Defendants' attorney would participate only in the revision and analysis necessary to ensure that the individual client's position was asserted. As examples of that process, the memorandum declares that counsel for the Universal Defendants and Jackson performed the preliminary research and drafting for the Motions to Compel Discovery and Forensic Testing (Docket Entries 127 and 155), Defendants' Motion for Summary Judgment (Docket Entry 206) and Defendants' Motion for Sanctions (Docket Entry 185). In similar fashion, counsel for EMI and JCP did the initial research and drafting for Defendants' Joint Motion to Strike/Exclude Plaintiffs' Expert (Docket Entry 204) and Defendants' Opposition to Plaintiffs' Motion to Exclude Defendants' Expert (Docket Entry 218). The same cooperative process was employed by Defendants in responding to the majority of Plaintiffs' nine post judgment motions.

The Joint Memorandum also declares that Defendants endeavored to avoid excessive and unnecessary costs by delegation of work to junior members of the firms, so that the work would be billed at lower rates. (Joint Supplement Memo, p. 12; Quick Supplemental Declaration, paragraph 12; Hugget Supplemental Declaration, paragraph 12;

Shefman Supplemental Declaration, paragraph 10).    My review of the time records confirms the movants' representations.

Plaintiffs' Joint Motion for Sanctions (Docket Entry 185) is a good example.  The 50 page motion and brief, supported by 34 exhibits totaling 339 pages, and an index of unpublished authority (Docket Entry 186) was filed jointly by all eight moving Defendants. The vast majority of the research on the issues of fabrication and spoilation of evidence, however, was performed by a single associate member of Dickinson Wright PLLC. (Supplemental Declaration of Daniel D. Quick, Esq., Docket Entry 283-6, pps. 44-51; 52-54; 64-67).  By my count, the underlying research consumed 55.7 attorney hours.  While that is a substantial time investment, the issues addressed were central to the disposition of the case, and the court's findings with respect to the conduct of Plaintiffs' lead counsel formed one of the two alternative bases for dismissal of the case with prejudice.  (Opinion and Order, Docket Entry 248).

> [C]ourts have held that it is improper to engage in an "ex post facto determination of whether attorney hours were necessary to the relief obtained."   The issue "is not whether hindsight vindicates an attorney's time expenditures, but whether at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures."

Hirsch and Sheehey, Awarding Attorneys Fees and Managing Fee Litigation (2nd Edition), Federal Judicial Center 2005, p. 29 (citing Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp., 995 F.2d 414, 420 (3rd Cir. 1993)).  Under the facts of the case at bar, I would be hard pressed to determine that the time invested in a fully successful dispositive motion was unwarranted.  In my view, the same holds true of the majority of 2,257.96 attorney hours invested in the defense of the eight fee claimants.  The docket sheet for this

16

case reflects 43 substantive motions, 31 of which were filed by the Plaintiffs (including 9 post judgment motions). The Defendants responses to those motions were almost uniformly successful. Similarly, they prevailed almost entirely on the 12 substantive motions filed on their behalf. I am satisfied that, for the most part, the hours invested in their fully successful defense of this action were reasonable, and that they should be compensated for the financial burden of that effort.

### Reasonable Hourly Rate

The determination of a reasonable hourly rate requires an examination of the relevant marketplace. <u>Missouri v. Jenkins</u>, 491 U.S. 274, 285 (1989). In their Joint Supplemental Memorandum (Docket Entry 279), Defendants submitted excerpts from two marketplace surveys. The first of those was a 2003 State Bar of Michigan report entitled "Economics of Law Practice." That report, based upon survey responses from Michigan practitioners, reflected a median hourly rate of $260.00 for practitioners of intellectual property law. The hourly rate for Intellectual Property lawyers at the 75th percentile was $328.00 per hour. (Exhibit B to Defendants' Joint Memorandum). Defendants also submitted excerpts from a study conducted by the American Intellectual Property Law Association ("AIPLA") in 2007. That study reflected a mean (average) hourly rate of $298.00 for partner level intellectual property practitioners in the "other central" region, which includes Michigan. The third quartile rate for partners was determined to be $330.00 per hour. The median hourly rate for associate level intellectual property practitioners was $190.00, and the third quartile rate was $248.00. (Exhibit D to Defendants' Joint Memorandum).

17

Defendants' Joint Supplemental Memo reflects that attorneys Daniel Quick, Jay Michael Huget, Jonathan Davis and John W. Martin, Jr. are (and were throughout this litigation) partner level practitioners with substantial intellectual property experience. Attorneys Michael Socha, Debra Swedlow and Thomas McCaffey were senior associate level practitioners.  Ms. Swedlow became a shareholder in the Butzel Long Intellectual Property Group in January 2008.  Based upon the survey information submitted, I am satisfied that a reasonable hourly rate for services rendered in this intellectual property case would be $330.00 for partner level practitioners, $250.00 for senior associate level attorneys, and $150.00 for junior associates (less than five years experience).[4]  I find that a reasonable hourly rate for non-attorney research assistants is $100.00 per hour.  I consider any hour billed at or below those rates to be reasonable, and will adjust any hour billed at a higher rate to be excessive to the extent it exceeds the respective reasonable hourly charge.

## Attorney Fee Calculations

### A.    The Universal Defendants and Curtis Jackson (Represented by Dickinson Wright PLLC)

Defendants The Island Def Jam Music Group, a division of UMG Recordings, Inc., Universal Music Publishing, Inc., Universal Music and Video Distribution Corp. and Curtis Jackson (collectively "Universal Defendants") seek a judgment for $233,188.00 in attorneys fees[5] together with expert witness fees in the sum of $14,273.28 and other expenses and

---

[4]  The 2003 Michigan Bar Survey reflects $150.00/hour for junior associates as both the median and 75th percentile rates.

[5]  This request does not include the $4,115.50 in sanctions imposed upon attorney Reed by Judge Roberts on August 21, 2006.

costs in the amount of $12,075.57. The Supplemental Declaration of Daniel D. Quick, lead counsel for the Universal Defendants, includes the fee statements issued by Dickinson Wright PLLC. Those statements reflect the hours expended in defending the case. 251.3 hours were expended by Mr. Quick, 571 hours by senior associate Michael Socha, and 66.5 hours and 48.5 hours by junior associates Kari Low and Patrick Green, respectively. A relatively small number of hours were billed for the work of non-attorney support personnel, including Michelle DiCarlo, Jan Bissett, Roger Mason, Mark Paliszewski, Barbara Adair and Barbara Bennett. I am satisfied that the total hours expended in the defense of the Universal Defendants was reasonable, in light of the extensive motion practice, most of which was necessitated by the conduct of Plaintiffs and their counsel. Accordingly, I have accepted the amount of attorney fees billed within the limits adopted as reasonable hourly rates for partner, senior associate, junior associate and non-attorney work, as set out at pages 17 and 18 of this report. By my calculation, the reasonable attorneys' fees incurred by the Universal Defendants totaled $229,578.00. I conclude that the Universal Defendants should recover a judgment in that amount against Plaintiffs and attorney Gregory J. Reed, jointly and severally.

### B.      EMI April Music, Inc. (Represented by Butzel Long PLC)

Defendant EMI April Music, Inc. seeks attorney fees in the sum of $227,216.50, together with expert witness fees of $14,233.78 and costs in the amount of $9,200.03. The request is supported by Defendants' Joint Supplemental Memorandum and the Supplemental Declaration of J. Michael Huget, Vice-President of Butzel Long PLC and lead counsel for EMI. Exhibit D to Mr. Huget's Declaration contains copies of the Butzel Long invoices reflecting the attorney fees and expenses billed to EMI in the course of this action.

The majority of that time was expended by Mr. Huget and Deborah Swedlow, who was a senior associate at Butzel Long until January 2008, at which time she became a shareholder in the Intellectual Property Group. Other Butzel Long attorneys contributed a small number of hours to the case. They include Carol Romej, Christopher Taylor, Zachary Moen and John Blattner. Mr. Huget's Declaration presents no biographical information with respect to the status of these later named attorneys with the firm. The billing rates quoted, as well as the registration numbers assigned to them in the Michigan Bar Directory, suggest that Romej and Taylor were, at least, senior associates, and that Moen and Blattner were junior associates. I have, therefore, imposed an hourly billing limit of $250.00 for Romej and Taylor, and $150.00 for Moen and Blattner. I have further imposed a billing limitation of $100.00 per hour for the work of non-attorney personnel, including Beth Kinnard and Marilyn Peterson.

As stated earlier in this Report, I am satisfied that the work hours reflected in the billing statements are reasonable in light of the record. I have, however, excluded time billed by attorneys Huget (3 hours) and Blattner (3.7 hours) for work on appellate issues. Such fees may be recovered at the conclusion of appellate proceedings.

Based upon my review, I find that Defendant EMI April Music, Inc. should recover a judgment against Plaintiffs and attorney Gregory J. Reed, jointly and severally, for attorneys' fees in the amount of $225,720.00.

20

**C.**  **Janice Combs Publishing dba Justin Combs Publishing (Represented by Plunkett Cooney PLC and Butzel Long PLC, beginning in August 2007, as well as Johnathan D. Davis, P.C.)**

Defendant Justin Combs Publishing ("JCP") also seeks recovery of its attorney fees. The request is supported by the Supplemental Declarations of John William Martin, Jr. and Johnathan D. Davis.  The record reflects that attorney Martin, of the law firm of Plunkett and Cooney, PC, filed an Answer and crossclaim[6] on behalf of JCP on August 4, 2005 (Docket Entry 37), and remained counsel of record for that Defendant until August 9, 2007 (Docket Entry 207), at which time the law firm of Butzel Long undertook the defense.  Mr. Martin's Supplemental Declaration includes copies of invoices setting out the hours devoted to JCP's defense from January 25, 2005 until his withdrawal as counsel.  Those records reflect 195.8 hours expended by Mr. Martin and billed at $325.00 per hour.  The invoices further reflect the expenditure of 1.6 hours by Mr. Martin's associate, Jennifer Damico, and an additional hour by non-attorney Kelly Klimmek.  The invoices further reflect the billing to JCP of $1,545.67 in "costs".  Notwithstanding the fact that the invoices reflect $64,099.00 in professional services rendered, Mr. Martin's Supplemental Declaration requests an award of $35,000.00 (inclusive of the $1,545.67 in billed expenses).  My review of the attorney time statements attached to the Declaration persuades me that the attorney fee portion of Martin's request is fully justified by the work performed,[7] and I recommend that

---

[6] The crossclaim asserted that JCP's co-Defendants should be liable to indemnify it for any damages to which Plaintiffs might be entitled from JCP.

[7] That is not to say that every individual item billed was fully justified.  Billings during the period from September 5, 2005 through September 22, 2005, for example, reveal multiple 0.2 hour expenditures ($65.00) for review and analysis of notices of service returns and attorney appearances.  I view such charges as excessive. Nonetheless, the majority of charges appear appropriate.  The invoices attached to the

Defendant JCP recover $33,454.33 from Plaintiffs and attorney Reed, jointly and severally.

Defendant JCP also seeks to recover attorney fees billed to it by Johnathan D. Davis, P.C.  That request is support by the Supplemental Declaration of Johnathan D. Davis, stating that he was the "primary contact with Defendant Justin Combs Publishing ("JCP") and served as the conduit between counsel of record for JCP and JCP."  Attached to the Supplemental Declaration are billing records reflecting time expended by Mr. Davis and his associate, Thomas M. McCaffrey for the period from June 29, 2005 through April 1, 2008.  The records indicate that a total of 82.9 hours were devoted to the representation of JCP, of which 44.1 hours were expended by Mr. Davis.  The Supplemental Declaration seeks attorney fees in the amount of $24,324.00, together with paralegal expenses in the amount of $900.00 and costs in the sum of $142.75.

I am troubled by the Johnathan D. Davis, P.C. attorney fee request.  At no time was that firm counsel of record for JCP in this action.  The actual representation of that Defendant was undertaken by attorney John W. Martin Jr. until August 9, 2007, and thereafter by attorneys J. Michael Huget and Deborah J. Swedlow, of Butzel Long.  That firm, of course, also represented Defendant EMI April Music, Inc. ("EMI").  JCP and EMI filed a Stipulation for the Substitution of Attorneys on August 9, 2007.  The Stipulation declared that they had "mutually decided to proceed with one attorney to represent both parties' interests."  (Docket Entry 207).  The hours expended by Butzel Long in the combined defense have been submitted in the Declaration of J. Michael Huget, as

---

Declaration indicate that Plunkett Cooney remained unpaid for their services throughout Mr. Martin's tenure as counsel of record.  The justification for his compromise request of $35,000.00 is not stated, but I am satisfied that the work performed exceeds that value.

22

discussed earlier in this Report. I have recommended that Plaintiffs and Mr. Reed be held jointly responsible for them.

The question remains, then, whether Defendant JCP should recover a separate and additional award of attorney fees for the services of Johnathan D. Davis, P.C. "as the conduit between counsel of record for JCP and JCP." For the reasons that follow, I find that no additional fees should be awarded.

JCP, of course, was free to hire as many attorneys as it saw fit to represent its interests in this litigation. That is not to say, however, that it should be allowed to recover all attorney fees incurred. Title 17 U.S.C. §505 provides for the recovery of "a reasonable attorneys fee to a prevailing party." Title 28 U.S.C. §1927 allows recovery only for attorney fees "reasonably incurred because of" the improper conduct of an opposing attorney. Under either statute, it is the burden of the party seeking the recovery of attorney fees to establish the reasonableness of its request. In the instant case, JCP was protected at all times by competent counsel of record. Nonetheless, Defendant elected to retain the Davis firm as a conduit and intermediary between itself and its attorneys. I am not persuaded that such an intermediary was necessary, or even reasonable. Counsel of record were active and competent in representing JCP's interests in the case. The substantive contribution of the Davis law firm to that effort is not readily discernible from Mr. Davis' Declaration and Exhibits.

Based on the records provided, I have some question as to the effectiveness of the Davis firm as an intermediary between JCP and Plunkett Cooney. The documents reflect that Mr. Martin's fee statements remained unpaid throughout the term of his representation. Further, his communications with JCP regarding the payment of invoices for litigation

23

support services were ignored by his client.  Significant portions of the attorney time billed by the Davis firm relate directly to efforts on Mr. Martin's part to secure payment of his billings.  (See Davis time entries for the period October 17, 2006 through November 17, 2006).  Additional time was expended by Mr. Davis and his firm in securing the substitution of the Butzel Long firm as counsel for JCP.  (See Davis entries for the period December 6, 2006 through August 3, 2007).  I can identify no reasonable theory under which Plaintiffs or their counsel should be held responsible for JCP's difficulties in communicating with and discharging its financial obligations to its attorneys of record.

I further find that the exhibits attached to the Declaration of Johnathan D. Davis often fail to reveal the precise nature of the work for which payment is sought.  The subject matter of telephone conferences and correspondence is often not stated.  Further, there are numerous billings for telephone communications with Mr. Martin as to which there is no corresponding entry in Martin's time records.

The vagueness of the Davis time entries continued following Mr. Martin's withdrawal as counsel.  Mr. Davis lists numerous communications with JCP's new attorneys of record, again without revealing the subject matter of the communications.  In the final analysis, I am simple unable to determine whether the Davis law firm's time expenditures contributed in any material way to the successful defense of Plaintiffs' Complaint.  Nor am I able to determine whether any of the time expended by the Davis law firm was rendered necessary by any act of Plaintiffs' attorney.  I conclude that Mr. Davis' Declaration fails to meet the standard of reasonableness under either statutory theory advanced.  I recommend that no additional fees be awarded to JCP.

24

**D.**    **Salaam Nassar and Soo Soo's Sweet Swisher Music (Represented by the Law Offices of Leslie Shefman)**

Defendants Salaam Nassar and Soo Soo's Sweet Shisher Music also seek recovery of their attorney fees in this action.   That request is supported by the Supplemental Declaration of Leslie C. Schefman.  Ms. Schefman avers that she and a summer law clerk expended 164.56 hours in the defense of her clients.  Because of her clients' limited resources, she agreed in the fall of 2006 to charge only for essential services "such as reviewing, researching and preparing papers, but not for other services, such as most telephone conferences, correspondence and the like."  She agreed to defer billing until the completion of the case.  Ms. Schefman represents that the time for which payment is sought is far less than was actually expended by her in the defense.  Her time was billed at $225.00 per hour, and her law clerk's work was billed at $75.00 per hour.  Both well within reasonable limits.

Unfortunately, the summary of legal work attached as an Exhibit to Ms. Schefman's Supplemental Declaration is lacking in substantial detail.  The summary for June - July 13, 2006, for example, lists 37 hours of law clerk research, without further explanation.  The billing statements also seem to switch, for no apparent reason, between time calculations on an hours/minutes basis (e.g. 55:45) and a decimal system employing tenths of hours (e.g. 1.7 hours).  There are also entries reflecting work performed, but containing no time element.  The defects are such that the computation of a reasonable fee is difficult.

By my calculation, the work summary reflects 128.8 hours expended by Ms. Schefman, and 41 hours contributed by her summer law clerk.  As the Supplemental Declaration neither describes the qualifications of the clerk, nor provides any information

25

relating to the nature of the work performed by that individual, I conclude that no fee should be awarded for that component of the summary. Nonetheless, while greater detail would have greatly enhanced her claim, I am satisfied that Ms. Schefman has provided sufficient information regarding her own efforts to warrant an award of fees at her normal $225.00 per hour rate. Both her records and the docket reflect her substantial participation in the case. Accordingly, I recommend that Defendants Salaam Nassar and Soo Soo's Sweet Swisher Music recover a judgment against Plaintiffs and their lead counsel, Gregory J. Reed, in the sum of $28, 980.00.

### Expert Witness Expenses

Defendant EMI and the Universal Defendants seek reimbursement for fees paid by them to expert witnesses. Ives R. Portrafka, a senior examiner with the Center for Computer Forensics, was retained to examine a zip disc obtained from Plaintiffs' counsel on December 14, 2006. He also performed an analysis of the Fharmacy computer. His opinions were relied upon by the court in its grant of Defendants' Motion for Summary Judgment and Motion to Dismiss. (Docket Entry 248, p. 18-22). Portrafka was paid the sum of $18,142.57 for his services. That expense was split evenly between the Universal Defendants and EMI. (Quick Dec., Paragraph 11; Huget Supp. Dec., Paragraph 12).

The same Defendants also retained Anthony Ricigliano, a musicologist, to compare the accused composition "Shot Down" and Plaintiffs' allegedly original work "ESS Beats." Mr. Ricigliano's opinion was that the two works were distinctively different. The court relied upon that opinion in rendering Judgment for the Defendants. (Docket Entry 248, pps. 28-30). Mr. Ricigliano was paid $10,325.00 for his services, and EMI and the Universal Defendants again divided the cost evenly.

26

I am satisfied that the fees paid by the Defendants to their consulting experts are not recoverable against the Plaintiffs under the Copyright Act. 17 U.S.C. §505 permits the court, in its discretion, to "allow the recovery of full costs" and "a reasonable attorneys fee" to the prevailing party. The majority of courts which have considered the issue have interpreted the term "full costs" to include only those expenditures listed in 28 U.S.C. §§1821 and 1920. Pinkham v. Camex, Inc., 84 F.3d 292 (8th Cir. 1996); Artison Contractors Ass'n of America, Inc. v. Frontier Ins. Co., 275 F.3d 1038 (11th Cir. 2002); Data General Corp. v. Grumins Sys. Support Corp., 825 F.Supp. 361 (D. Mass. 1993).

There is case authority for the contrary proposition. In Twentieth Century Fox Film Corp. v. Entertainment Distributing, 429 F.3d 869 (2005), the Ninth Circuit held that a district court may award otherwise non-taxable costs, including those that lie outside the scope of §1920, under 17 U.S.C. §505. The decision cites Coles v. Wonder, 283 F.3d 798, 803 (6th Cir. 2002), in which our Circuit affirmed an award of non-taxable costs under §505, without discussion.

In Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437 (1987), the Supreme Court considered the authority of federal courts to impose upon a losing party the compensation of the prevailing party's expert witness. In a holding based solely upon Fed.R.Civ.P. 54(d) the court determined that taxable costs were limited to those set forth in 28 U.S.C. §§1821 and 1920. The Ninth Circuit, in Twentieth Century Fox v. Entertainment Distributing, distinguished Crawford by construing the term "full costs" in §505 as authority to impose non-taxable costs, including those that lie outside the scope of §1920, under 17 U.S.C. §505. The theory was that the word "full" must have been intended by Congress to expand the term "costs". While I concede the logic of the

27

argument that each word in a statute should serve a purpose, I am persuaded that the word "full" does not expand the definition of the word "costs." As "costs" are defined in 28 U.S.C. §1921, I am inclined to agree with the majority of holdings which limits recovery to the items specified in that statute.

Our circuit applies a restrictive definition of the word "costs" in its interpretation of 28 U.S.C. §1927 as well. The court has held that the term should be limited to taxable costs because the statute, being penal in nature, is to be strictly construed. United States v. Ross, 535 F.2d 346, 350-51 (1976). Expert witness fees are not taxable costs listed in 28 U.S.C. §§1821 and 1920. Nor are such fees properly assessed under Fed.R.Civ.P. 54(d)(1). Costs under that rule are limited to those enumerated in §1920, and the discretion afforded to the court is discretion to deny an award of costs, and not to impose costs beyond those enumerated in the costs statute. In Re: Cardizem Antitrust Litigation, 481 F.3d 355 (6th Cir. 2007). The court also lacks equitable discretion to impose costs upon an attorney, as opposed to a losing party. Id..

It must be observed, however, that 28 U.S.C. §1927 authorizes a court to impose liability upon a misbehaving attorney for more than costs and attorneys fees. The statute provides that offending counsel may be held responsible "to satisfy personally the excess costs, expenses, and attorney fees reasonably incurred because of such conduct." In the case at bar, the moving Defendants plausibly argue that they incurred the expert witness fees as reasonable and necessary expenses in responding to the highly questionable evidence proffered by attorney Reed in support of his clients' copyright claims. It is apparent that the court relied upon the opinions of Messrs Portrafka and Ricigliano in rendering summary judgment for Defendants, and in determining that Reed's misconduct

28

warranted dismissal of Plaintiffs' claims with prejudice.  There is case law supporting the proposition that an attorney who prosecutes an action in bad faith may be held responsible under 28 U.S.C. §1927 for reasonable expenses paid by an opposing party for expert opinion necessary to defend the action.  See Home Design Services, Inc. v. Schwab Development Corporation, 2007 WL 2902963 (M.D. Fla.); Alphonso v. Pitney Bowes, Inc., 356 F.Supp. 2nd 442 (D. N.J. 2005).  I am satisfied that the fees paid for expert opinion in the case at bar were reasonable and necessary expenses for purposes of a §1927 sanction.  The opinions of Portrafka and Ricigliano were highly technical and essential to the proper adjudication of the case.  Each was listed as an expert witness for the trial. Each consultant performed an expert analysis, compiled a report and expressed an opinion.  Defendants were obliged to pay for those services. Plaintiffs have offered no evidence that the fees charged were unreasonable in light of the work performed. Accordingly, I recommend that the expert witness fees paid by the movants be imposed against attorney Reed under 28 U.S.C. §1927, but not against the parties Plaintiff.

## Other Expenses and Costs

Other than the fees paid to their expert witnesses, the largest single category of expense sought to be recovered by the moving Defendants is the charges paid by them for computer research.  Such charges are not recoverable as "costs" under 28 U.S.C. §1920, but they are clearly "expenses" incurred in connection with the defense of the Plaintiffs' Complaint.  I find no Sixth Circuit case directly addressing this point.  Despite some authority to the contrary, it appears that the majority of courts which have considered the matter have denied recovery for computer legal research as a separate expense.

29

> [I]t now appears settled that the costs of such research are not separately taxable, but are rather a component of attorneys fees. In support of this position, one court has observed that if the research had been done by an attorney sitting in a library reading books rather than sitting before a computer screen, nobody would dispute that the attendant fees would be properly classified as attorneys fees and not costs. And the added cost of computerized research is normally matched with a corresponding reduction in the amount of time an attorney must spend researching.

21A Fed. Proc., L.Ed. §51.105 (footnotes and citations omitted).

The billing statements submitted by the moving Defendants indicate that the costs of computer legal research were billed to their clients as a separate charge from the attorney time. It would be unusual, however, in my own experience, that attorney fee statements would charge through to the client the costs incurred by a law firm in procuring and maintaining a hard copy law library. I agree with the majority of courts that computer legal research is essentially the equivalent of such a library, and part of the overhead expense which is customarily considered in establishing an hourly rate for attorney time. I conclude, therefore, that the Defendants are not entitled to recovery computer billing costs in addition to their attorneys fees for hours devoted to research.

Movants seek reimbursement for additional expenses incurred in connection with their successful defense. Those charges include copy expenses, filing fees, telephone/facsimile charges, delivery expenses and office supplies. Certain of those expenses may be recoverable as costs, to the extent that they are enumerated in 28 U.S.C. §1920, by utilization of the procedure set out in E.D. Mich. LR 54.1 and the Bill of Costs Handbook adopted by this court. To the extent that they are not so recoverable, however, I find that they are, for the most part, normal expenses incidental to the practice of law, and

subsumed within the overhead component of each particular attorneys hourly billing rate. Accordingly, I would recommend denial of the Motion with respect to the non-taxable law firm expenditures.

## Court Costs

As prevailing parties, the moving Defendants should be awarded their costs. Fed.R.Civ.P. 54(d). Under the Local Rules of this court, a party seeking costs must file a Bill of Costs no later than 28 days after the entry of judgment. The clerk will then tax costs under Fed.R.Civ.P. 54(d)(1) as provided in the Bill of Costs Handbook. I recommend that each moving Defendant recover such costs as may be taxed by the clerk in accordance with that procedure.

The clerk may tax costs on one days notice. On a motion served within the next five days, the court may review the clerk's action. Fed.R.Civ.P. 54(d)(1).

## Plaintiffs' Responses

In their Response to Defendants' Joint Memorandum and Supplemental Affidavits, Plaintiffs offer a number of arguments. They maintain, for example, that Defendants Joint Supplemental Memorandum was untimely; that it is insufficient because Defendants failed to meet their burden of establishing their entitlement to an award of attorney fees in their initial motion; and that it is not supported by an affidavit from each attorney who participated in the defense. I find those arguments unpersuasive.

The Joint Supplemental Memorandum was filed in Response to the district judge's determination that more detailed information was necessary to a proper decision. As I understand the court's Opinion and Order of August 15, 2008 (Docket Entry 271),

31

Defendants were instructed to provide more detailed supporting information to the magistrate judge in connection with the referral of their Motion for hearing and determination. Implicit in the court's Order is a determination that, despite shortcomings in the initial request, the issue of attorney fee reimbursement was not foreclosed. Indeed, the entire purpose of the Order of Reference was to permit further evaluation of Defendants' Requests. Each Defendant has submitted a supplemental declaration signed by its lead counsel. Those declarations are supported by billing records which reflect hours expended on the case by subordinate attorneys. I am satisfied that the Affidavit of each lead counsel is sufficient to verify the accuracy of the firm's billing records, and that an individual Affidavit by each contributing member of the firm is unnecessary.

Plaintiffs further argue that the Defendants were not entitled to an evidentiary hearing. Once again, the Order referring this matter to the magistrate judge plainly stated that he was to conduct such hearings as he might determine necessary to a proper recommendation.

Plaintiffs further argue that Defendant EMI April Music, Inc. is not entitled to an attorney fee award against Plaintiffs because the movant's fees were based upon vexatious multiplication of proceedings brought on by their own counsel's misconduct. I deem that argument foreclosed by the district judge's consideration of the parties respective Motions for Sanctions. My own reconsideration of those matters is not within the current Order of Reference.

Plaintiffs rightly observe that a party seeking attorney fees bears the burden of documenting his entitlement. Webb v. County Bd. Of Educ., 471 U.S. 234, (1985). Where the documentation is inadequate, a court may reduce the award by excluding excessive,

32

redundant or otherwise unnecessary hours.  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  Plaintiffs are correct as well in observing that "hours spent reviewing records, talking to other lawyers or experts, preparing legal documents, etc., cannot be fully verified and require the court to trust the lawyer's word that the hours claimed represent necessary work actually performed."  (Plaintiffs' Brief, Docket Entry 315, p. 15) (citing Coulter v. Tennessee, 805 F.2d 146 (6th Cir. 1986).  It is accurate to say that attorneys may have a financial interest in exaggerating the hours expended, or may have used poor judgment in allotting too many hours on some part of the case, or by unnecessarily duplicating the work of co-counsel.  In the case at bar, however, there is a substantial basis for crediting the accuracy of the time records submitted by Defendants.  This litigation consumed 33 months, and the docket sheet reflects 319 entries.  Forty-three substantive motions were filed in the case, thirty-one of which were filed by Plaintiffs.  The volume of written product generated by the parties is readily apparent from a review of the various pleadings and motion papers.  Additional evidence of the reasonableness of Defendants' time expenditures is found in Exhibit A to Defendants' Joint Supplemental Memorandum (Docket Entry 251-8).  That exhibit is a copy of a letter written on February 28, 2007 by Mr. Reed to defense counsel.  On page three of the letter, Mr. Reed declared that his attorney fees and costs over the first twenty-two months of the dispute exceeded $160,000.00.  The docket sheet reflects only 154 entries as of the date of that declaration.  The record further establishes that the intensity of the dispute, and the number of contested motions increased substantially after that date.  Using Mr. Reed's own declarations as a yard stick, I have no difficulty in accepting, subject to the noted exception, the accuracy and

33

reasonableness of the hours expended by the Defendants, in great part as a result of Mr. Reed's misconduct.

For all of the reasons stated herein, I recommend that Defendants recover their respective attorney fees, expenses and costs as follows:

1.   Defendants The Island Def Jam Music Group, a division of UMG Recordings, Inc., Universal Music Publishing, Inc., Universal Music and Video Distribution Corp. and Curtis Jackson (collectively "Universal Defendants") should be awarded judgment against Plaintiffs and Gregory J. Reed, jointly and severally, in the sum of $229,578.00 as reasonable attorneys' fees.   The same Defendants should recover judgment against Gregory J. Reed in the additional sum of $14,233.78, representing expert witness expenses reasonably incurred.

2.   Defendant EMI April Music, Inc. should be awarded judgment against Plaintiffs and Gregory J. Reed, jointly and severally, in the sum of $225,720.00 as reasonable attorneys' fees.  The same Defendants should recover judgment against Gregory J. Reed in the additional sum of $14,233.78, representing expert witness expenses reasonably incurred.

3.   Defendant Janice Combs Publishing dba Justin Combs Publishing ("JCP") should recover judgment against Plaintiffs and Gregory J. Reed, jointly and severally, in the sum of $33,454.33, representing its attorneys' fees reasonably incurred in the defense of this action.

4.   Defendants Salaam Nassar and Soo Soo's Sweet Swisher Music should recover judgment against Plaintiffs and Gregory J. Reed, jointly and severally, in the sum of $28,980.00, representing attorney fees reasonably incurred in the defense of this action.

34

5. Each Defendant should recover judgment against Plaintiffs and Gregory J. Reed, jointly and severally, for its costs as may be taxed by the clerk in accordance with Fed.R.Civ.P. 54(d)(1) and E.D. MI LR 54.1.

## <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. Section 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981), <u>Thomas v. Arn</u>, 474 U.S. 140 (1985), <u>Howard v. Secretary of HHS</u>, 932 F.2d 505 (6th Cir. 1991). Filing of objections that raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. <u>Smith v. Detroit Federation of Teachers Local 231</u>, 829 F.2d 1370, 1373 (6th Cir. 1987), <u>Willis v. Secretary of HHS</u>, 931 F.2d 390, 401 (6th Cir. 1991). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall not be more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The

35

response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Donald A. Scheer
DONALD A. SCHEER
UNITED STATES MAGISTRATE JUDGE

DATED: November 5, 2009

_____

### CERTIFICATE OF SERVICE

I hereby certify on November 5, 2009 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically.  I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on November 5, 2009: **None.**

s/Michael E. Lang
Deputy Clerk to
Magistrate Judge Donald A. Scheer
(313) 234-5217