UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FHARMACY RECORDS, a/k/a
FHARMACY RECORDS PRODUCTION CO.,
FHARM I PUBLISHING COMPANY, SHELTON
RIVERS,
           Plaintiffs,

v.                                                    Case Number 05-72126
                                                  Honorable David M. Lawson
SALAAM NASSAR, CURTIS JACKSON,        Magistrate Judge Donald A. Scheer
DARRIN DEAN, DEF JAM RECORDING,
RUFF RYDERS, JUSTIN COMBS PUBLISHING,
UNIVERSAL MUSIC PUBLISHING, UNIVERSAL
MUSIC & VIDEO DISTRIBUTION CORPORATION,
EMI APRIL, INC., SOO SOOS SWEET SWISHER
MUSIC, JOHN DOE, ET AL.,
           Defendants.
_____/

**OPINION AND ORDER DENYING DEFENDANTS' MOTION
TO ENJOIN STATE COURT ACTION**

This matter is back before the Court, this time on motions by the defendants to enjoin a state court action brought by the plaintiffs in this case against the attorneys for the defendants in this case. The lawsuit alleges misconduct under various state law theories of liability. It is not clear from the defendants' motion if they seek an injunction directed to the state court, the plaintiffs, or both. That matters not at present, however. This Court's authority to enjoin state court proceedings is narrowly circumscribed, and although the plaintiffs' state court claims are almost certainly based on factual allegations that already have been decided against them in this Court, the exact legal claims presented in state court were not adjudicated here. Therefore, the Court must find that the injunction the defendants seek cannot be granted. The Court will deny the motion and consign the defendants to the state court judge's able offices for proper application of traditional issue and claim preclusion doctrines under state law.

I.

In this copyright sampling case, the plaintiffs brought suit alleging that defendant Salaam Nassar stole a rhythmic beat created by plaintiff Shelton Rivers, a.k.a. the "Ess Man." After Rivers made the beat, the Fharmacy plaintiffs allegedly acquired an interest in it and secured copyright protection. Later on, rap artist DMX released a song with a strikingly similar beat entitled "Shot Down." Many of the defendants were involved in the production of "Shot Down" and sales of the album on which it appeared. When the album went platinum, the plaintiffs sued. Their theory was that Nassar had access to Rivers's equipment, and he simply lifted the beat when Rivers wasn't looking.

In deciding the lawsuit against the plaintiffs, the Court found that the plaintiffs in their complaint alleged unlawful "sampling" of a sound recording in violation of 17 U.S.C. § 114(b), the plaintiffs were unable to produce any evidence that the protected work and the accused work were identical, and the defendants were entitled to summary judgment on the merits of the claim. The Court also documented the disturbing conduct of the plaintiffs and their attorneys in the manipulation and destruction of evidence in the case, which resulted in a finding that dismissal was an appropriate sanction. The plaintiffs appealed, and the Sixth Circuit affirmed.

After the Court dismissed the case, the plaintiffs filed a slew of post-judgment motions, including three motions for relief from the opinion and order dismissing the case, a motion for attorney's fees, a motion for reconsideration, and a motion for a ruling on the request for recusal. The Court denied the plaintiffs' motions, granted the defendants' motion for attorney's fees, and referred the matter of determining attorney's fees and whether attorney Gregory Reed should be

jointly and severally liable to Magistrate Judge Donald Scheer. The plaintiffs appealed to the Sixth Circuit and lost again.

Since the Court's August 15, 2008 order denying the plaintiffs' first round of post-judgment motions, the plaintiffs have inundated the Court with duplicative motions. The Court has dealt with four rounds of post-judgment motions, each round consisting of numerous motions that simply repeat arguments that the Court has already decided. However, a common theme among the many motions was the alleged misconduct of the defendants' attorneys and their expert witness. The Court found that no such misconduct was established.

On January 7, 2010, plaintiffs Shelton Rivers, Fharmacy Records Production Company, and Fharm I Publishing Company filed an action before Judge Gershwin A. Drain in the Wayne County, Michigan circuit court against the defendants' computer expert witness in this case, Ives Potrafka, his employer Center for Computer Forensics, Ltd., and other unidentified defendants designated in the complaint as John Does, Jane Does, Agents and Attorneys. On February 4, 2010, the defendants moved to permanently enjoin the plaintiffs' state court suit against Ives Potrafka. The Court held a hearing on April 13, 2010, and denied the motion because the defendants failed to establish that the parties in the state case were identical to or in privity with the parties in the present action because Ives Potrafka was not in privity with the defendants. The Court did not apply the concept of non-mutual defensive collateral estoppel, which would have been applicable to a defense of claim or issue preclusion had one been interposed in state court, because the Court believed the narrower requirements of the Anti-Injunction Act would not permit it.

On December 30, 2010, Shelton Rivers, Fharmacy Records, Inc., and Fharmacy Records's officers filed a new lawsuit against the lawyers who represented the defendants in this case —

Michael Socha, Daniel Quick, Deborah Swedlow, Michael Huget, Leslie Schefman — and others — "agents, supervisors, [and] John Does" — bringing claims for abuse of process through witness tampering (Count I), abuse of process through a fraudulent and perjured expert report (Count II); tortious interference with a contract business relationship or expectancy (Count III);negligence (Count IV); civil conspiracy (Count V); fraud and witness tampering misrepresentation (Count VI); fraud and expert report misrepresentation (Count VII); unfair competition (Count VIII); intentional infliction of emotional distress (Count IX); and common law/fraudulent deceit (Count X). The case is assigned to Judge Prentis Edwards of the Wayne County, Michigan circuit court.

The defendants allege in their motion that the new state court lawsuit is nothing more than a blatant attempt by the plaintiffs to relitigate issues relating to defense attorney misconduct that have been rejected by this Court in the numerous post-judgment motions with which the plaintiffs and their lawyers have inundated the record in this case. The defendants contend that under statutory and decisional law, federal courts have the authority to issue injunctions in aid of their judgments to prevent relitigation of issues already finally decided. They believe that because the state court claims necessarily depend on a finding that the defense lawyers committed misconduct as to expert and fact witnesses in the present case, and this Court has consistently rejected the plaintiffs' allegations against them when adjudicating post-judgment motions, this Court has the authority to enjoin the state court case to protect the integrity of those findings.

The plaintiffs argue that the claims brought before the state court were never part of the present lawsuit. They contend that the defendants cannot have the injunction they seek because they have not satisfied the criteria set forth in *Kerr v. United States Dist. Ct. for the Northern Dist. of*

*California*, 426 U.S. 394 (1976), a case dealing with a writ of mandamus. They also state that there is no independent basis for subject matter jurisdiction to issue an injunction.

The Court heard oral argument from the parties on March 15, 2011.

II.

The basic power of the federal courts to protect their judgments by injunction derives from the All Writs Act. *See Tropf v. Fidelity Nat'l Title Ins. Co.*, 289 F.3d 929, 941 (6th Cir. 2002). The All Writs Act provides: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). "However, what appears to be broad discretion and authority has been greatly circumscribed, both by case law and by statute." *In re Life Investors Ins. Co. of Am.*, 589 F.3d 319, 330 (6th Cir. 2009) (stating that the Act "should only be used 'sparingly and only in the most critical and exigent circumstances'") (quoting *Wisconsin Right to Life, Inc. v. FEC*, 542 U.S. 1305, 1306 (2004) (Rehnquist, C.J., in chambers)).

One such statute circumscribing federal courts' powers under the All Writs Act is the Anti-Injunction Act, which limits a federal court's power to enjoin a state court proceeding. *Lorillard Tobacco Co. v. Chester, Willcox & Saxbe*, 589 F.3d 835, 844 (6th Cir. 2009). The Anti-Injunction Act states: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. In essence, the Act operates to prohibit federal courts from issuing injunctions against state court proceedings "'commenced after the institution of the federal suit but before . . . injunction was issued.'" *Tropf*, 289 F.3d at 941 (quoting *Roth v. Bank of the Commonwealth*, 583 F.2d 527, 528 (6th Cir. 1978)).

The "necessary . . . to protect or effectuate its judgment" language in the Anti-Injunction Act is known as the "relitigation exception." *Great Earth Cos. v. Simons*, 288 F.3d 878, 894 (6th Cir. 2002). This exception is derived from principles of claim and issue preclusion, and it is intended to "permit a federal court to prevent state litigation of an issue that previously was presented to and decided by the federal court." *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 147 (1988). However, unlike claim and issue preclusion, the relitigation exception is tightly circumscribed by overriding tenets of federalism, as the Supreme Court explained recently in its most recent term. *Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2375 (2011) (stating that the "core message" of the Anti-Injunction Act "is one of respect for state courts. The Act broadly commands that those tribunals 'shall remain free from interference by federal courts.'" (quoting *Atlantic Coast Line R. Co. v. Locomotive Eng'rs*, 398 U.S. 281, 282 (1970)).

In *Smith*, the Supreme Court reiterated that the statutory exceptions found in the Anti-Injunction Act are to be narrowly construed, and "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed." *Ibid.* (quoting *Atlantic Coast Line*, 398 U.S. at 297). Specifically addressing the relitigation exception, the Court explained:

> [I]n applying this exception, we have taken special care to keep it "strict and narrow." After all, a court does not usually "get to dictate to other courts the preclusion consequences of its own judgment." 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4405, p. 82 (2d ed. 2002) . . . . Deciding whether and how prior litigation has preclusive effect is usually the bailiwick of the second court . . . . So issuing an injunction under the relitigation exception is resorting to heavy artillery. For that reason, every benefit of the doubt goes toward the state court; an injunction can issue only if preclusion is clear beyond peradventure.

*Smith v. Bayer Corp.*, 131 S. Ct. at 2375-76 (citations and footnote omitted).

In *Smith*, the Court also reiterated that two basic requirements must be satisfied before the relitigation exception will permit an injunction against state court proceedings: first, "the issue the federal court decided must be the same as the one presented in the state tribunal." *Id.* at 2576. Second, the party to the state court action "must have been a party to the federal suit, or else must fall within one of a few discrete exceptions to the general rule against binding nonparties." *Ibid.* With respect to the first requirement, even if the legal issue in the state court is nominally identical to the issue previously decided in federal court, an injunction may not be appropriate if the "legal standards" applied by the two courts differ. *Ibid.*

The state court lawsuit in the present matter does not seek to relitigate either aspect of this Court's final judgment, that the plaintiffs' sampling claim failed as a matter of law or that the plaintiffs and their attorneys engaged in severe misconduct. Instead, it seeks a determination that defense counsel acted inappropriately during the course of the federal litigation, a subject raised and decided in post-judgment motions, but not in the context of the state court causes of action. The Court must examine the state court complaint to determine if it has ruled on the specific questions the plaintiffs' state court suit raises.

1. Count One – Abuse of Process (Witness Tampering)

This count alleges that defense counsel unlawfully abused the federal legal system by interrogating Rofael Jackson in an unlawful manner. In the federal case, the plaintiffs sought attorney's fees under 28 U.S.C. § 1927 for defense counsel's "clandestine" deposition of Rofeal Jackson without providing the plaintiffs or their counsel with notice of the deposition, *see* Pls.' Mot. for Costs and Attorney's Fees [dkt. #241]; Pls.' Mot. for Costs and Attorney's Fees In Violation of 28 U.S.C. § 1927 for Vexatiously Multiplying Proceedings [dkt. #251]. The Court denied the

-7-

plaintiffs request for attorney's fees stemming from any conduct involving Rofeal Jackson in its August 15, 2008 opinion and order denying plaintiffs' motion for relief from judgment [dkt. #271]. The plaintiffs also sought relief from the judgment on the ground that Les Schefman violated the Federal Rules of Civil Procedure and engaged in misconduct, abuse of discovery, and witness tampering, and sought a show cause order requiring Les Schefman to explain why he did not violate the rules. *See* Mot. for Relief and Show Cause [dkt. #312]. The Court found that this motion lacked merit. *See* Opinion and Order Denying Pls.'s Several Mots. for Relief from Js. and Orders or for Reconsideration, Denying Defs.' Mot. to Strike Pls.' Mot or for an Inj., and Continuing Order Referring Defs.' Mot. for Attorney's Fees to Magistrate Judge [dkt. #313].

A determination that the plaintiffs were not entitled to attorney's fees under 28 U.S.C. § 1927 and that the plaintiffs were not entitled to relief from the judgment based on Schefman's conduct do not necessarily constitute the same issue as presented in count I of the state court complaint. "Under § 1927, a court must review whether the attorneys engaged in conduct which multiplied the litigation unreasonably or vexatiously." *Riddle v. Egensperger*, 266 F.3d 542, 553 (6th Cir. 2001). A court may impose sanctions "when an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims." *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1230 (6th Cir. 1986). To prove a claim of abuse of process, "a plaintiff must plead and prove (1) an ulterior purpose and (2) an act in the use of process which is improper in the regular prosecution of the proceeding." *Friedman v. Dozorc*, 412 Mich. 1, 30, 312 N.W.2d 585, 594 (1981) (citing *Spear v. Pendill*, 164 Mich. 620, 623, 130 N.W. 343, 344 (1911)).

The questions presented to this Court — whether defense counsel multiplied the proceedings unreasonably and vexatiously and whether the plaintiffs deserved relief from judgment because of defense counsels' conduct — are materially different than the question presented to the state court. This Court was never asked to decide if the plaintiffs made out a viable claim for abuse of process against defense counsel. The Court did determine that defense counsel did not engage in misconduct, and, with the proper application of issue preclusion principles, that finding may indeed be fatal to the plaintiffs' state court claim. However, because the two claims are not identical, the question must be left to the state court judge to decide.

2. Count Two – Abuse of Process (Fraudulent and Perjured Expert Report)

The plaintiff's second state court claim also seeks relief on an abuse of process theory, this time for submitting a false expert report in the present case that was intended, the plaintiffs allege, to injure the plaintiffs and destroy their name, reputation, and business interest, and to deprive them of their property rights and royalty from the record sales. In the federal suit, the plaintiffs filed a number of motions regarding Ives Potrafka's expert report. In docket #211, the plaintiffs moved to exclude Potrafka from testifying and to strike his report because his report was not based on any reasonably reliable methodology and he was not qualified as an expert in the area. The Court denied the motion for lack of merit. *See* Opinion and Order Granting Defs.' Mot. for Summ. J. [dkt. #248]. The plaintiffs moved for relief from the order dismissing their complaint on the ground that the court was misled that the export report was true and accurate; the report allegedly was flawed in its conclusion that the zip disk was "wiped clean." Pls.' Counsel's Mot. for Relief from the Court's March 31, 2008 Order Dismissing Plaintiffs' Case [dkt. #268]. In docket number 269, the plaintiffs moved for relief under Rule 60(b) on the grounds that (1) Ives Potrafka mistakenly asserted that the

dates of the music files found on R.J. Rice Studio's hard drive could not be verified; and (2) the Court failed to recognize that R.J. Rice and R.J. Rice II are distinct individuals. The Court denied both motions. *See* Opinion and Order Denying Pls.'s Request to Disqualify Judge, Denying Pls.' Mots. for Reconsideration and Relief from J., Denying Pls.' Mot. for Attorney's Fees, and Referring Defs.' Mot. for Attorney's Fees to Magistrate Judge [dkt. #271].

The motion in docket number 277 sought relief from the summary judgment order and the order denying relief from that order under rule 60(b)(1)-(3) and (6) on the ground that defense expert Ives Potrafka violated "Daubert criteria" because his report was not founded upon any scientific basis, and he failed to disclose that he had some involvement with the plaintiffs' expert, Ralph J. Rice, II, in examining certain computer media. Docket number 278 sought relief under the same rule because the Court relied on Mr. Potrafka's expert report when Potrafka allegedly had a conflict of interest arising from his dealings with Mr. Rice. Docket number 285 contained another attack on Mr. Potrafka and, along with it, attacks upon defense counsel Leslie Schefman, Daniel Quick, and Bea Swedlow. The plaintiffs argued that they should have known of Mr. Potrafka's conflict of interest and should have informed the Court, and they paid the expert an excessive fee. Docket number 291 reprised these same arguments, citing several provisions of the Michigan Rules of Professional Conduct. Docket number 312 repeated the arguments of the motion under docket 291 and asked the Court to vacate the March 31 and August 15, 2008 orders and issue an order for Mr. Schefman to show cause why he should not be sanctioned for violating discovery and ethics rules. The Court denied all of these motions for lack of merit. *See* Opinion and Order Denying Pls.' Several Mots. for Relief from J. and Orders or for Reconsideration, Denying Defs.' Mot. to Strike

Pls.' Mot. or for an Inj., and Continuing Order Referring Defs.' Mot. for Attorney's Fees to Magistrate Judge [dkt. #313].

The plaintiffs then moved under Federal Rule of Civil Procedure 60(d)(3) to set aside the judgment as a product of fraud on the Court (docket #327), arguing, among other things, that defense counsel perpetrated a fraud on the Court by exerting impermissible undue influence on the contents of Potrafka's ghostwritten, unsigned report in order to provide support for the defendants' position and to steal Rivers's music. The plaintiffs also moved the Court to require the defendants to show cause why they should not produce the signed actual forensic report of plaintiffs' tested zip disk. *See* Docket #336. The plaintiffs also sought an order requiring Ives Potrafka to attend a hearing and to offer testimony on the plaintiffs' Rule 60(d)(3) motion regarding his unsigned computer forensic report. (dkt. #338). In these motions, the plaintiffs continued their attack on witness Potrafka's report, upon which the Court relied in granting the defendants' motion for summary judgment, contending that some of the defense lawyers exerted "undue influence" over Potrafka's forensic report, and thereby perpetrated a fraud on the Court. (dkt. #336). The Court denied the plaintiffs' motion to set aside the judgment and their requests for post-judgment discovery, finding that the reliability of Potrafka's report and the propriety of defense counsel's conduct throughout the litigation had been litigated at length. *See* Order Granting the Pls.' Mot. for Expedited Consideration and Denying their Mots. for Post-Judgment Discovery [dkt. #344].

The defendants summarize it well: "Plaintiffs have filed motion after motion requesting that this Court impose sanctions upon defense counsel, claiming that they engaged in fraud or collusion, all of which form the basis of their state court action. *See* dkts. #251, 285, 313, 327 (Jackson); 211,

241, 268, 269, 277, 278, 285, 291, and 327 (Potrafka - expert witness). All of those motions were rightfully denied by this Court." Defs.' Brief in Supp. of Mot. at 16-17.

Although the Court has decided a number of motions concerning Ives Potrafka's expert report, the Court never decided whether defense counsel's actions constituted an abuse of process. It appears that all the factual predicates of the plaintiffs' claim have been determined against them, and as with the previous count, issue preclusion ought to provide a ready basis for the state court judge to promptly dispose of the plaintiffs' claim in this count as well. But this Court has not decided this specific abuse-of-process issue under state law. Therefore, the Court cannot enjoin the state court from hearing the plaintiff's claim.

### 3. Count Three – Tortious Interference with a Contract Business Relationship

The plaintiffs' state court complaint alleges that defense counsel intentionally interfered with their business relationship with Rofael Jackson, inducing a breach, disruption, or termination of the business contracts. This Court was never faced with this question, and therefore, cannot prevent the state court from hearing the plaintiff's toritous interference claim because there is no judgment regarding such a claim to protect.

### 4. Count Four – Negligence

In their state complaint, the plaintiffs allege that defense counsel breached their duty to the plaintiffs to exercise ordinary knowledge, skill, ability, and act in good faith under state law. Merely stating that claim calls into question its viability, since Michigan law clearly states that "an attorney owes no actionable duty to an adverse party," *Friedman*, 412 Mich. at 21, 312 N.W.2d 589, and therefore no negligence action can be based on such a relationship. Nonetheless, although the Court has made a number of decisions that defense counsel's conduct did not warrant sanctions under 28

U.S.C. § 1927, it has not decided if they can be held liable for negligent conduct under Michigan law. Therefore, that claim may not be enjoined.

### 5. Count Five – Civil Conspiracy

The plaintiffs contend in this count that defense counsel used acts of deception and misrepresentation and other unlawful means to extract valuable information from their business partner and key witness, Rofael Jackson. Like the last two claims, this Court did not decide whether defense counsel engaged in a civil conspiracy under state law.

### 6. Remaining Claims

This Court likewise has not ruled on the specific issues raised by the plaintiffs in the remaining state court claims — fraud and expert report misrepresentation, unfair competition, intentional infliction of emotional distress, and common law fraud. As with the previous issues, the Court has decided against the plaintiffs fact issues that are necessary to support these claims. However, because the specific causes of action have not been addressed by this Court, the Court cannot enjoin the plaintiffs from bringing the claims in state court. As *Chick Kam Choo* and *Smith v. Bayer Corporation* make clear, the relitigation exception to the Anti-Injunction Act authorizes district courts only to enjoin state courts from hearing issues that were actually decided in the federal court. This Court has not decided the merits of any of the claims brought by the plaintiffs in the state court.

### III.

The Court believes that it is quite clear that in filing the state court action, the plaintiffs are attempting to revive their discredited arguments of defense attorney misconduct for which there is no record support in this Court. It is not a novel tactic, but fortunately it is not a common one. And

the state courts have the necessary tools to deal with the situation. However, because this "court does not usually 'get to dictate to other courts the preclusion consequences of its own judgment,'" *Smith*, 131 S. Ct. at 2375-76 (quoting 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4405, p. 82 (2d ed. 2002)), an injunction cannot prevent the state court litigation of the state law claims, even thought they derive from allegations of lawyer misconduct already found by this Court to have no merit. The Court must find that the state court action does not fall under the relitigation exception to the Anti-Injunction Act.

Accordingly, it is **ORDERED** that the defendants' motion to enjoin state court proceedings [dkt #442] is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: July 18, 2011

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 18, 2011.

s/Susan K Pinkowski
SUSAN K. PINKOWSKI